**Sonnie BATES, et al., Plaintiffs,**

v.

**Donald RUMSFELD, et al., Defendants.**

**No. CIV.A. 01–0941(RBW).**

United States District Court, District of Columbia.

May 30, 2002.

John J. Michels, McGuire, Woods, Battle & Boothe, LLP, McLean, VA, Counsel for Plaintiffs.

Deborah M. Autor, U.S. Department of Justice, Washington, DC, Co–Counsel for Defendant.

Gerald Zingone, Thelen, Reid & Priest, LLC, Washington, .DC, Co–Counsel for Defendant.

1. "Compl." references plaintiffs' complaint.

## MEMORANDUM OPINION

WALTON, District Judge.

This lawsuit concerns an issue that recent events have made of particular relevance to our nation's security: biological warfare. Plaintiffs, Sonnie Bates and Captain John Buck, bring this action on behalf of themselves and all other similarly situated individuals, for a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (2000), that Anthrax Vaccine Adsorbed ("AVA"), which is currently being administered only to selected units of the United States Armed Forces, is an investigational new drug ("IND") as defined by 21 U.S.C. § 355 (2000), or a drug unapproved for its intended use under 10 U.S.C. § 1107 (2000) and Presidential Executive Order 13139. The defendants include Donald H. Rumsfeld, Secretary of Defense for the Department of Defense ("DOD" or "Department"), Tommy Thompson, Secretary of Health and Human Services for the Department of Health and Human Services, Bernard A. Schwetz, Acting Principal Deputy Commissioner of the Food and Drug Administration ("FDA") (hereafter collectively referred to as the "federal defendants"), and Bioport Corporation ("Bioport"), a Michigan company with its sole place of business in Michigan, who is the current owner of the license to manufacture AVA.

This matter is currently before the Court on the federal defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and defendant Bioport's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). For the reasons stated below, the Court concludes that the defendants' motions must be granted.

I. *Background* [1]

"Fed. Defs.' Mot." references the Federal De-

Taking the facts as stated in the complaint as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the facts pertinent to this action are as follows: AVA was licensed as a vaccine for use against anthrax[2] on November 2, 1970, by the United States Public Health Service.

(Compl.¶ 8.) Plaintiff Bates is a former active-duty Air Force pilot who, following disciplinary action for his refusal to take AVA, voluntarily resigned and was then honorably discharged from active military service.[3] (Compl.¶ 1.) Plaintiff Buck is a currently an active Air Force physician who faced court-martial charges for his failure to take AVA.[4] (*Id.*) The similarly

fendants' Motion to Dismiss. "Bioport's Mot." references defendant Bioport Corporation's Memorandum of Law in Support of its Motion to Dismiss. "Pls.' Opp." references Plaintiffs' Opposition to Defendants' Motion to Dismiss. Finally, "Fed. Defs.' Reply" references the Reply Brief in Support of Federal Defendants' Motion to Dismiss.

2. Anthrax is a potentially deadly disease caused by the spore-forming bacterium *Bacillus anthracis.* (Fed. Defs.' Mot. at 3.) There are three primary methods by which humans can be exposed to anthrax: (1) through direct skin contact with contaminated animals and animal products (cutaneous anthrax); (2) through ingestion of undercooked infected meat (gastrointestinal anthrax); and (3) through inhalation of aerosolized spores (inhalation anthrax). (*Id.*) *Bacillus anthracis* is considered "one of the most likely biological warfare agents, especially via aerosolized spores." (*Id.*)

3. At the time he was ordered to take the anthrax vaccination, plaintiff Bates was a pilot and a commissioned Air Force officer holding the grade of Major, who, due to the nature of his assignment at the Dover Air Force Base in Delaware, was ordered to take the anthrax vaccine. (Fed. Defs.' Mot. at 8.) Bates failed to comply with a written order to be inoculated on December 3, 1999, and on December 8, 1999, non-judicial punishment proceedings were initiated against him. (*Id.* at 9.) Bates decided to exercise his right to non-judicial punishment proceedings in lieu of trial by court martial. (*Id.*) As a result of these non-judicial proceedings, Bates was required as punishment to pay $1,600 per month for two months and given a reprimand. (*Id.* at 9–10.) On March 8, 2000, the Air Force initiated an administrative discharge action against Bates, but on March 10, 2000, before the hearing could be held, Bates submitted his voluntary resignation. (*Id.* at 10.) On March 18, 2000, the Secretary of the

Air Force approved Bates' resignation request and discharged him "under honorable conditions." (*Id.*) As a result, Bates is no longer an active member of the United States armed forces and, as agreed to by the parties during their oral arguments, is currently on inactive status. (*Id.*)

4. Plaintiff Buck is a commissioned Air Force officer holding the grade of Captain. (Fed. Defs.' Mot. at 10.) Buck is a staff physician and is board certified in emergency medicine. (*Id.*) On October 18, 2000, Buck was notified that he would imminently be deployed to the Persian Gulf as a primary member of the Critical Care Air Transport Team, and, as a result, he would have to take the anthrax vaccination. (*Id.*) Buck refused to take the vaccine. (*Id.*) Buck demanded a trial by court martial and on May 14, 2001, a general court-martial convened to hear the case against Buck, who was charged with "willfully disobeying the lawful order of his superior commissioned officer in violation of Article 90, UCMJ (10 U.S.C. § 890 (2000))". The military judge concluded that AVA was not an investigational new drug, that using the vaccine against both cutaneous and inhalation anthrax exposure was not an unapproved use, and that the order for Buck to be inoculated was lawful. (*Id.* at 13.) On May 18, 2000, Captain Buck was convicted by an 11 member court-martial panel of one specification of willfully disobeying a superior commissioned officer. (*Id.*) On May 19, 2000, the panel sentenced Buck to a reprimand, forfeiture of $1,500 pay per month for 14 months, and restriction to the Keesler Air Force Base for 60 days. (*Id.*) At the time the complaint was filed, Buck had as many as six levels of review of his conviction remaining. (*Id.* at 14.) However, Buck's court-martial became final on or about March 22, 2002. Thus, his administrative appeals have now been exhausted. (Joint Statement of the parties filed May 8, 2002.)

situated individuals who are also designated as plaintiffs include "some 500 current and former members of the Armed Forces who have been disciplined or forced to resign for failure to take the AVA after being ordered to do so, and all active duty military members who may subsequently be ordered to take the vaccination." (*Id.*)

The plaintiffs' actions stem from an announcement made in December 1997[5] by the Department of Defense that indicated its intention to implement a "multi-service vaccination program for all active duty, Reserve and National Guard service members using the AVA as a preventative for inhalation anthrax." (*Id.* ¶ 28.) As a result of this program, plaintiffs and others similarly situated to them, were ordered to submit to involuntary anthrax vaccinations. (*Id.* ¶ 29.) Plaintiffs object to the administration of AVA because they argue the drug is an IND for which the Army must obtain their consent or a waiver by the President of the United States prior to administering the vaccine to them.[6] Plaintiffs argue that AVA is an investigational drug because (1) it is not licensed as a vaccine for inhalation anthrax, the purpose for which the military instituted its use[7] and because (2) the DOD has deviated from the licensed application's schedule for administering AVA.[8] (*Id.* ¶ 41.) Those

---

**5.** Defendants state that the announcement, which was made by then Secretary of Defense William Cohen, was made on May 18, 1998. In his announcement, former Secretary Cohen stated his decision to approve implementation of the Anthrax Vaccine Immunization Program ("AVIP") for the active and Selected Reserve components of the armed forces, was made to protect them from the use of anthrax as a biological weapon. (Fed. Defs.' Mot. at 4.) Secretary Cohen stated that this program would occur in phases over the next several years, and would begin with personnel assigned to or performing duties in Southwest Asia and Korea, the greatest areas of threat. (*Id.*)

**6.** Pursuant to 10 U.S.C. section 1107, any investigational new drug or drug unapproved for its intended use may not be given to members of the Armed Forces without their prior consent, absent a waiver by the President of the United States. In addition, Presidential Executive Order 13139 provides that prior to administering an investigational drug or a drug unapproved for its intended use to members of the Armed Forces, the DOD must "obtain informed consent from each individual unless a waiver of this requirement is signed by the President of the United States." (Compl. ¶ 43.)

**7.** Initially, the DOD (through the Department of the Army) issued a Request for Proposals ("RFP") for the development of a new anthrax vaccine because there were no vaccines that would "effectively protect military personnel [against *Bacillus anthracis*]." (Compl. Ex. C, Department of the Navy Request for Proposals (RFP) No. DAMD17–85–R–0078 issued May 16, 1985, at 4.) Eventually, probably as a result of inadequate responses, the Department of the Army contracted with the SAIC Corporation in 1995 to develop a plan to obtain FDA approval of a license amendment for AVA so that the manufacturer could represent that AVA was effective against inhalation anthrax. (Compl. ¶ 17.) As part of this effort, on September 20, 1996, one of Bioport's predecessors, Michigan Biologic Products Incorporated ("MBPI"), submitted an IND application seeking authorization for the position that AVA "is effective against inhalation anthrax." (*Id.* ¶¶ 4, 20, 27.) Subsequently, Bioport supplemented the IND application for AVA wherein it stated that the sole license modification being sought was for the inclusion of inhalation anthrax to the AVA license. (*Id.* ¶ 32.) This supplemented IND application is currently pending before the FDA. (*Id.* ¶ 31.) Plaintiffs allege that Bioport's act of seeking a license modification to indicate that AVA is effective against inhalation anthrax is proof that AVA is being used as an investigational drug by the DOD as a preventative against inhalation anthrax. (*Id.* ¶ 34.)

**8.** The license for AVA provides that "primary immunization consists of three subcutaneous injections, 0.5mL each, given two weeks apart followed by three additional subcutaneous injections, 0.5mL each given at 6, 12, and 18 months." (Compl. ¶ 11.) In June 2000, the DOD announced that it was suspending all AVA vaccinations for all but a limited number

persons refusing to submit to the AVA vaccination have been subjected to "military disciplinary actions, including courts-martial convictions, forfeitures of pay and allowances, incarceration, and administrative separation from the Armed Forces." (*Id.* ¶ 30.)

Plaintiffs seek judicial declarations that AVA is an investigational new drug within the meaning of 10 U.S.C. § 1107 and Presidential Executive Order 13139; that AVA has been an investigational new drug since the original investigational new drug application was filed on September 20, 1996; that AVA has also been in investigational status as a result of the DOD's June 2000 modified vaccination schedule; and that, as of December 1997, AVA is a drug unapproved for its intended use within the meaning of 10 U.S.C. § 1107 and Presidential Executive Order 13139. Plaintiffs also seek to recover their litigation related costs and attorney's fees.

In June, 2001, the DOD ceased the administration of AVA for all but special mission units and research use, and there is no current plan to resume the vaccination of the remainder of the armed forces unless and until the shortage of AVA is resolved. (Fed. Defs.' Mot. at 31.)[9]

## II. *Analysis*

### A. *Standard for Deciding a Motion to Dismiss*

 When reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman,* 507 U.S. at 164, 113 S.Ct. 1160. Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of establishing jurisdiction. *Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (citation omitted). "A motion to dismiss under 12(b)(1) for lack of standing . . . involves an examination of the face of the complaint . . ." *Haase v. Sessions,* 835 F.2d 902, 908 (D.C.Cir.1987). As a result, the " 'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge,* 185 F.Supp.2d at 13–14 (citations omitted).

---

of personnel because of a shortage of the vaccine. (*Id.* ¶ 37.) As a result, the DOD announced that members of the Armed Forces who had received at least one of the sequence of the six required vaccinations would be subject to a modified vaccination schedule, inconsistent with the vaccination schedule required by the AVA license. Those members who had received one or more vaccinations, but had not completed the six injection sequence would not be required to restart the inoculation sequence so long as they received an additional shot within two years of their last vaccination. (*Id.* ¶ 38.) Plaintiffs allege that this deviation from the licensing schedule for AVA represents a new use of AVA by the DOD, thus rendering its use investigational. There is no allegation that any plaintiff has been subjected to this modified vaccination schedule.

9. There have been three slow-downs in administering the AVA vaccine, all the results of a supply shortage. As a result of the first two shortages, only those members in the greatest danger of exposure to anthrax were administered the vaccine. (Fed. Defs.' Mot. at 5–6.) The third slow down occurred subsequent to the filing of the complaint in this action and, as a result of this slow down, AVA is currently being administered only to "designated special mission units, manufacturing and Department of Defense research personnel, and Congressionally mandated anthrax research." (*Id.* at 6.) The DOD intends to resume the AVIP with regard to other military personnel only if Bioport completes its facility renovations, the FDA approves the supplement to Bioport's application regarding these renovations, a sufficient quantity of the vaccine is produced by the renovated facility and is released to the FDA for the Department's use, and the Department is confident that the vaccine shortage problems have been resolved. (Fed. Defs.' Mot. at 6–7.)

However, in deciding a 12(b)(1) motion, the court is not limited to the allegations in the complaint but may consider " 'such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case.' " *Grand Lodge,* 185 F.Supp.2d at 14 (citations omitted). The Court should only consider such additional evidence "to assure itself of the existence of standing." *Haase,* 835 F.2d at 907.

### B. *The Federal Defendants' Motion to Dismiss* [10]

The federal defendants make several arguments in support of their motion to dismiss the plaintiffs' complaint: (1) that this case is barred by the doctrine of sovereign immunity because the United States cannot be sued without its consent, and such consent is a prerequisite for the Court to acquire jurisdiction and (2) that this case should be dismissed because it does not present a justiciable controversy because plaintiff Bates' claims are moot as a result of his voluntary resignation from the Air Force. Both defendants also argue that (3) the declaratory judgment sought by both Bates and Buck [11] is incapable of

redressing their injuries and that the Court should therefore exercise its discretion under the Declaratory Judgment Act to dismiss this case [12] and (4) plaintiffs' challenge to the now suspended modified vaccination schedule policy is moot because the modified schedule was adopted subsequent to Bates' resignation from the military and plaintiff Buck has not been subjected to this schedule.

Plaintiffs, in opposition to defendants' motions to dismiss, argue the following: (1) Bates has standing to challenge defendants' actions because he was forced to resign from the armed forces and this resignation stems from the defendant's "illegal vaccination program." (Pls.' Opp. at 17.) In addition, Captain Buck is currently facing a realistic prospect of being ordered to take AVA because he remains on active duty in the Air Force. (*Id.* at 20.)(2) Defendants are not shielded from suit as a result of sovereign immunity because they are acting contrary to federal law. (3) The investigational new drug status of AVA is a perfect issue to be resolved by declaratory judgment because a declaration by this Court as to AVA's IND status will allow the military courts and

**10.** Defendant Bioport adopted the arguments of the federal defendants and therefore its arguments are not addressed separately. However, one position asserted by Bioport, that was not asserted by the federal defendants, was that Bioport was not subject to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because it neither resides or transacts business in the District of Columbia, it has not caused any tortious injury in this jurisdiction, and it has not been shown to have the minimum contacts necessary to comport with due process. *See* D.C.Code § 13–423 (2001); *Crane v. New York Zoological Society,* 894 F.2d 454, 455–56 (D.C.Cir.1990). However, because the Court finds that the complaint must be dismissed in its entirety on Rule 12(b)(1) grounds, it will not address whether plaintiffs have established that the Court can exercise personal jurisdiction over defendant Bioport.

**11.** Initially all defendants argued that Captain Buck's case should be dismissed as a matter of comity due to his failure to exhaust his administrative remedies. (Fed. Defs.' Mot. at 16–20); (Bioport's Mot. at 6.) However, at oral argument the parties agreed that this theory is no longer viable because Captain Buck's court-martial became final on March 22, 2002; thus, he has now exhausted all of his administrative appeals. (*See also* Joint Statement of the parties dated May 8, 2002, at 2.)

**12.** 28 U.S.C. § 2201(a) provides that in the case of an actual controversy that is within its jurisdiction, "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added).

civilian administrative boards to determine the proper disposition of plaintiffs' administrative appeals. (*Id.* at 7, 19.) (4) Finally, regarding their challenge to the modified vaccination schedule, plaintiffs argue that the defendants' illegal change in the vaccination schedule should not be permitted to escape judicial review. (*Id.* at 22.)

While each side has presented interesting substantive arguments, the Court will not need to ultimately reach them because it finds that the constraints placed on it by Article III of the Constitution preclude the issuance of a declaratory judgment in this matter. Therefore, plaintiffs' claims must be dismissed because this court lacks subject matter jurisdiction over their claims.[13]

### 1. *Plaintiff Bates' claims*

■ Article III, § 2 of the United States Constitution provides that courts have jurisdiction over all "cases and controversies." As part of this requirement, litigants must demonstrate that they have standing to assert their claims. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish standing, plaintiffs must satisfy the following three-part test:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) "actual or imminent," not "conjectural or hypothetical[.]" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent ac-

tion of some third party not before the court...." Third, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. 2130 (citations omitted). It is the burden of the party seeking to invoke federal jurisdiction to establish the existence of these elements. *Id.* at 561, 112 S.Ct. 2130 (citation omitted).

■ At the outset, the nature of the injury necessary for a party to have standing must be concrete. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("[p]laintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."). In this regard, a plaintiff must be able to demonstrate that "he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate' ..." *Id.* at 102, 103 S.Ct. 1660 (citations omitted).

Plaintiff Bates has failed to establish that he has sustained, or will sustain in the immediate future, injury flowing from the defendants' use of AVA. As stated previously, Bates voluntarily resigned from the Air Force on March 10, 2000, before a hearing could be held regarding his potential administrative discharge. At oral argument, plaintiffs' counsel stated that Bates is currently a member of the Air

---

13. Because the Court finds that plaintiffs do not have standing to assert their claims, it need not address the merits of plaintiffs' claims, as it would be required to do if it were granting the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir. 1987) ("Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with res judicata effect.") (citation omitted). The "defect of standing is a defect in subject matter jurisdiction" and therefore the Court will not address defendants' arguments made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 906 (citation omitted).

Force's Individual Ready Reserve,[14] and in that status counsel candidly acknowledged that the likelihood that Bates will be called to duty and would have to submit to the administration of AVA is uncertain at best. In addition, currently the military is vaccinating only selected special units.[15] Whether in fact the policy of immunizing all military personnel will resume is not definite, and in any event, whether Bates would be subject to that policy if it does resume considering his inactive status is pure speculation. *See Lyons,* 461 U.S. at 109, 103 S.Ct. 1660 (plaintiff's lack of standing did not "rest on the termination of the police practice [of utilizing chokeholds] but on the speculative nature of his claim that he will again experience injury as a result of that practice even if continued.").

 Plaintiffs nevertheless argue that by "declaring whether AVA is an IND vaccine for inhalation anthrax, this Court will clarify the primary legal question upon which the parties differ." (Pls.' Opp. at

7.)[16] Despite this appeal, a declaratory judgment can not be issued "when the possibility of the injury's occurring is remote and uncertain." *Lampkin v. Connor,* 360 F.2d 505, 509 (D.C.Cir.1966); *Atlas Air, Inc. v. Air Line Pilots Assoc.,* 232 F.3d 218, 227 (D.C.Cir.2000) ("[u]nder the Declaratory Judgment Act, a dispute 'must not be nebulous or contingent but must have taken on fixed and final shape.'") (citations omitted). Whether in fact the military will reinstate its policy requiring the vaccination of all military personnel is, at this point, contingent on unsettled future events and is therefore speculative. Because the likelihood that Bates will be subjected to the administration of AVA is remote, as is the situation for the other similarly situated plaintiffs who are no longer on active duty, they cannot satisfy *Lujan's* first prong.

Even assuming that plaintiff Bates and other similarly situated plaintiffs could demonstrate that they were forced to voluntarily resign from the military as a re-

**14.** In their May 15, 2002, Notice of Filing, the federal defendants state that they have searched the military personnel data system in order to confirm Bates' status in the military. However, as stated in the defendants' attached Declaration of Major Joseph G. Linford, this search confirmed that Bates has "no military status in the Air Force reserve, active or inactive, including the Individual Ready Reserve." (Fed Defs.' Notice of Filing at 1.) Nevertheless, the Court must, at this stage, accept as true all factual allegations contained in the complaint. This, however, does not alter the Court's analysis because even if Bates is a member of the Individual Ready Reserve, his counsel's concession during oral argument that Bates is not currently facing a palpable threat of taking the anthrax vaccine satisfies the Court that Bates does not have standing to assert his challenge to AVA's status as an investigational drug.

**15.** The fact that the military has temporarily ceased operation of its allegedly illegal vaccination program does not moot this case. *See Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Services, Inc.,* 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."). Only if it was "absolutely clear that [the military's conduct] ... could not reasonably be expected to recur" could this case be mooted. *Id.* at 193, 120 S.Ct. 693. That is not the situation, as the government's attorneys concede that it is not clear whether the vaccination program will resume. However, the fact that the vaccination program could resume does not change the fact that it is highly speculative and unlikely that Bates would ever be subjected to administration of the vaccine, and thus he lacks standing to challenge the program.

**16.** Plaintiffs' counsel also argued at oral argument that a favorable declaration by this Court would permit Bates to challenge his discharge before the Air Force Board for Correction of Military Records. However, that board would not be bound by this Court's decision; nor would it necessarily grant Bates the relief he seeks.

sult of the AVA policy, as discussed more fully below, they have not shown that the injury they suffered is " 'likely . . . to be redressed by a favorable decision' " by this Court. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *McCollum v. Smith,* 596 F.Supp. 165, 167 (D.D.C.1984) (when determining standing, the relevant inquiry, " 'assuming justiciability of the claim, [is whether] the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision.' ") (citing *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Thus, as discussed in greater detail below, plaintiffs have failed to establish the redressability prong of standing. This deficiency dooms not only Bates' case but also all of the other plaintiffs' actions.

### 2. *Plaintiff Buck's claims*

 Plaintiff Buck's case suffers from the same constitutional impediment as do all of the plaintiffs' cases—redressability. Although Captain Buck has suffered a direct injury as a result of the military's immunization program, *i.e.,* his court martial conviction, it is unpredictable whether a declaration by this Court concerning AVA's status as an investigational drug will redress the injury he has suffered. Plaintiffs' counsel argues that a favorable declaration on this issue will be used by Buck, and similarly situated plaintiffs, to demonstrate to the military that its actions were contrary to law. However, a favorable declaration will not have the force to require the military to reverse its decisions. In fact, plaintiffs have not presented anything that even vaguely suggests that the declaration will have any impact at all in any subsequent proceedings before the military. *See Lujan,* 504 U.S. at 572, 112 S.Ct. 2130 ("it is entirely conjectural whether the nonagency activity that affects respondents will be altered or affected by the agency activity they seek to achieve."); *University Medical Center of*

*Southern Nevada v. Shalala,* 173 F.3d 438 (D.C.Cir.1999).

In *University Medical Center,* the appellant sought a declaratory judgment that the Department of Health and Human Services ("HHS") had acted arbitrarily and capriciously in failing to include plaintiff on a list that would have entitled plaintiff to discounts from drug manufacturers on certain pharmaceutical drugs. 173 F.3d at 440. In affirming the dismissal of the case on the ground that the appellant's injury was not redressable, the District of Columbia Circuit held that "[e]ven if appellant had a declaratory judgment that the government unlawfully delayed in placing [appellant] on the list, it has never explained how, or under what legal theory, it would be entitled to recover against the manufacturers [for the higher prices it had to pay]." *Id.* at 442. The Court noted that the appellant's argument, that "it should be allowed to seek redress in two steps, first getting a declaratory judgment and then suing the manufacturers" was "essentially a concession that the redressability requirement cannot currently be met. Redressability must be satisfied *now* to establish jurisdiction." *Id.* (emphasis in original).

Similar to the appellant in *University Medical Center,* Captain Buck and other similarly situated plaintiffs have failed to establish that a favorable decision by this Court will immediately provide them with the relief they are seeking. Like the appellant in *University Medical Center,* plaintiffs seek redress in two steps—a favorable declaration from the Court and then a challenge to the military concerning its decisions to sanction them. In other words, Captain Buck can not demonstrate that the ultimate relief he is seeking, namely, reversal of the court martial decision, will be redressed by a declaration by this Court that AVA was in IND status at

the time he refused to be vaccinated. *McCollum*, 596 F.Supp. at 169 (granting defendant's motion to dismiss plaintiffs' complaint for declaratory relief where the plaintiffs failed to demonstrate the declaratory relief requested would redress the injuries plaintiffs had sustained). And this reality is fatal to Caption Buck's case. *See U.S. Ecology, Inc. v. United States Dep't of the Interior*, 231 F.3d 20, 25 (D.C.Cir. 2000) (when redressability is dependent on the actions of a third party, it is the plaintiff's burden to " 'adduce facts showing that those choices have been or will be made in such manner as to ... permit redressability of injury.' ") (quoting *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130). Whether the military will even give deference to the Court's declaration is totally uncertain because this will depend upon " 'the unfettered choices made by independent actors not before the court[ ] and whose exercise of broad and legitimate discretion the court[ ] cannot presume either to control or to predict.' " *Id.* at 24 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989)). Therefore, Captain Buck's claims and the claims of those plaintiffs who have actually suffered an injury still fall short of the mark because they have not demonstrated that a declaration entered in their favor by this Court will redress now (or in the future even though this consideration is irrelevant) the injuries they have sustained.

For the reasons stated above, defendants' motions to dismiss the complaint are granted due to plaintiffs' inability to establish standing.[17]

### *ORDER*

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that the federal defendants' motion to dismiss plaintiffs' complaint is granted. It is further

**ORDERED** that Bioport Corporation's motion to dismiss plaintiffs' complaint is granted.

---

17. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.