# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMIRA GONZALEZ BOISSON,

     Plaintiff,

       v.

MICHAEL R. POMPEO, Secretary, U.S.
Department of State, in his official capacity,

     Defendant.

Civil No. 19-2105 (JDB)

## MEMORANDUM OPINION & ORDER

This Court recently granted in part and denied in part the government's motion to dismiss plaintiff Amira Gonzalez Boisson's complaint, dismissing her due process claim but permitting her Administrative Procedure Act ("APA") claim to proceed. See April 28, 2020 Mem. Op. ("April 28 Op.") [ECF No. 20] at 1. The surviving claim asserts that the government "wrongfully revoked [her] United States passport in violation of 5 U.S.C. § 706(2)."[1] Compl. [ECF No. 1] ¶ 24. As relief, she requests that the Court "[i]ssue a declaratory judgment declaring [her to be] a United States citizen and national who is entitled to the rights and privileges of citizenship, including a United States passport." Id. at 6. The Court must now resolve two related disputes between the parties: first, should Gonzalez Boisson's APA claim be resolved de novo, or on the administrative record? And second, whatever the standard of review, is she entitled to a judicial determination of her citizenship, or only a determination of the lawfulness of the government's revocation of her passport?

---

[1] The Court will not recount here the background facts of this case, which were detailed at length in the April 28 opinion. See April 28 Op. at 1–3.

1

As to the first question, the APA allows "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," to seek review of the agency action in federal court. 5 U.S.C. § 702. The scope of judicial review is ordinarily limited to questions of law, because as the D.C. Circuit has noted, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The 'entire case' on review is a question of law." Id. at 1083. As a result, district courts generally do not engage in factfinding and are instead limited to the administrative record developed before the agency. See Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013) (noting that it is "black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision" (internal quotation marks omitted)).

This limited review is codified in § 706(2) of the APA, which authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions found to be":

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). Only § 706(2)(F) "permits a reviewing court to look beyond the administrative record." NVE, Inc. v. Dep't of Health & Hum. Servs., 436 F.3d 182, 189 (3d Cir. 2006). The government contends, then, that unless Gonzalez Boisson can show that § 706(2)(F) applies, "the APA forecloses any de novo proceeding." Def.'s Br. Regarding the Standard of Review ("Gov't Br.") [ECF No. 25] at 2. Gonzalez Boisson, for her part, argues that the Court should take into

2

account Congress's and the Supreme Court's consistent preference for de novo review in cases involving questions of citizenship, but she ultimately agrees with the government that she must hang her hat on § 706(2)(F) to receive de novo review of her APA claim. See Pl.'s Reply Br. [ECF No. 27] at 4 ("The specific question before the Court at this juncture is whether Ms. Gonzalez Boisson's claim merits de novo review under 5 U.S.C. § 706(2)(F).").

De novo review under § 706(2)(F) is to be conducted only in "rare circumstances." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). It is authorized in just two instances: "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971). Gonzalez Boisson argues that the first situation applies here. See Mem. of P. & A. in Supp. of De Novo Review of Pl.'s Claim ("Pl.'s Opening Br.") [ECF No. 26] at 11. The government does not appear to dispute that the decision to revoke Gonzalez Boisson's passport qualifies as "adjudicatory." See Def.'s Reply to Pl.'s Br. Regarding the Standard of Review ("Gov't Reply Br.") [ECF No. 28] (arguing only that the revocation procedures were not inadequate); see also 22 C.F.R. § 51.5 (authorizing the government to "adjudicate applications and authorize the issuance of passports").

Hence, whether § 706(2)(F) applies here comes down to whether Gonzalez Boisson has demonstrated that the government's factfinding procedures were "inadequate." The "inadequacy" standard is an extraordinarily difficult one to meet. The D.C. Circuit has never provided explicit guidance on how to analyze what procedures would be inadequate, but the Circuit has noted that it has "never applied de novo review in an APA case." Zevallos v. Obama, 793 F.3d 106, 112 (D.C. Cir. 2015) (emphasis added). Moreover, it has "stated in dicta that 'procedures must be

3

severely defective before a court proceeding under the APA can substitute de novo review for review of the agency's record.'" Id. (quoting Nat'l Org. for Women v. Social Sec. Admin., 736 F.2d 727, 745–46 (D.C. Cir. 1984) (Mikva & McGowan, JJ., concurring)). And the Supreme Court has suggested that factfinding procedures can be adequate even where an agency adjudication is based only on review of the administrative record, with no formal oral hearing or issuance of findings of fact. See Camp v. Pitts, 411 U.S. 138, 141–42 (1973). In contrast, in the only case the Court can locate concluding that § 706(2)(F) is applicable, the relevant factfinding procedures were tainted by "biased" investigators. Porter v. Califano, 592 F.2d 770, 783 (5th Cir. 1979); see Am. Banker's Ass'n v. Nat'l Credit Union Admin., 513 F. Supp. 2d 190, 198 (M.D. Pa. 2007) (noting that Porter "remains atypical").

Despite the strictness of the § 706(2)(F) inadequacy standard, Gonzalez Boisson argues that the government's factfinding procedures were "severely defective" here because she was not given "any notice or opportunity to respond preceding passport revocation." Pl.'s Opening Br. at 13, 18. But the Court has already analyzed the pre- and post-revocation procedures at issue in the context of Gonzalez Boisson's Due Process Clause claim and concluded that they afforded her due process. See April 28 Op. at 16–18. Given that determination, Gonzalez Boisson had a high hurdle to overcome to demonstrate that the very same procedures that satisfy the Due Process Clause are nonetheless "severely defective" under § 706(2)(F).

She has failed to do so. As noted, even the lack of any hearing at all would not necessarily render factfinding procedures inadequate. See Camp, 411 U.S. at 141–42. But here, Gonzalez Boisson was given the opportunity (which she did not take) for a prompt post-revocation hearing, which would have allowed her to "testify in person, offer evidence . . . in her own behalf, present witnesses, and make arguments." 22 C.F.R. § 51.71(d); see Ex. 1 to Mot. to Dismiss ("Revocation

4

Letter") [ECF No. 12-2] at 2. And she has offered no explanation for why the precise timing of a hearing—before or after revocation—is of such critical importance to the adequacy of the government's overall factfinding procedures as to merit de novo review. Moreover, she has made no allegations of anything like a corrupt or biased investigator, as existed in Porter. See 592 F.2d at 783. The Court concludes that § 706(2)(F) does not apply here, and therefore that review of Gonzalez Boisson's APA claim is limited to the administrative record.

The second question the Court must resolve is just what, precisely, this litigation is about— what relief Gonzalez Boisson is entitled to if she prevails. Again, her stated request for relief is a declaratory judgment that she is a U.S. citizen. Compl. at 6. But her APA claim, as articulated in her complaint, is that the government "wrongfully revoked [her] United States passport." Compl. ¶ 24. The agency action she is challenging, then, is the revocation of her passport. And "administrative cancellation of a citizen's passport . . . shall 'affect only the document and not the citizenship status of the person in whose name the document was issued.'" L. Xia v. Tillerson, 865 F.3d 643, 651–52 (D.C. Cir. 2017). Hence, the revocation of her passport "does not have any bearing on whether she is actually a citizen." Apr. 28 Op. at 13. Because of this fact, the government argues that "the question presented by Gonzalez Boisson's claim is not whether she is a citizen per se, but whether the [government] acted consistent with the standards for agency action set forth in the APA in revoking the passport," and that under that framing of the question, no judicial determination of her citizenship is necessary. Gov't Opening Br. at 3.

The Court concludes that the government is correct and that, under the circumstances of this case, the Court need not—and should not—determine whether Gonzalez Boisson is in fact a U.S. citizen. Under the APA, plaintiffs must challenge specific, final agency action. See Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001). Here, the agency action Gonzalez Boisson has

5

challenged is the decision to revoke her passport. See Compl. ¶ 24; Apr. 28 Op. at 5 n.2 (noting that the revocation of Gonzalez Boisson's passport was "final agency action" (citing Rusk v. Cort, 369 U.S. 367 (1962)). That decision was made under 22 C.F.R. § 51.62(a)(2), which allows the government to revoke a passport that it determines was "obtained illegally, fraudulently, or erroneously." Revocation Letter at 1. Because the Court has concluded that § 706(2)(F)'s provision for de novo review is inapplicable, the Court's proper role in this case is only to determine whether the government's revocation decision, on the facts before the government, complied with the APA. See Fla. Power & Light, 470 U.S. at 743–44 ("The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." (emphasis added)). That is, the Court must assess whether the government has "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found" and the decision to revoke Gonzalez Boisson's passport. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation omitted). If the Court ultimately concludes that the decision did violate the APA, then "the proper course . . . is to remand to the agency for additional investigation or explanation," not to resolve the underlying question of Gonzalez Boisson's citizenship.[2] Fla. Power & Light, 470 U.S. at 744.

In an attempt to bolster her argument that the Court should determine whether she is a citizen, Gonzalez Boisson contends that a line of cases beginning with Ng Fung Ho v. White, 259

---

[2] Gonzalez Boisson repeatedly cites this Court's statement in its April 28 opinion that the "underlying legal question" in the case is whether she is a citizen. Apr. 28 Op. at 12. That statement remains true. However, the Court said it in the context of analyzing whether 8 U.S.C. § 1503(b) and (c) constitute an adequate alternative remedy to APA review. The Court had not yet conducted an analysis to determine whether § 706(2)(F) applies. Certainly, in a similar case where the plaintiff can demonstrate that § 706(2)(F) is applicable, a court could engage in a de novo review of the revocation decision and in the course of that review render a decision as to whether a person is a citizen. But the Court's statement was not intended to imply that Gonzalez Boisson was necessarily entitled to a determination of her citizenship absent a showing that § 706(2)(F) applies. Because the Court has concluded that § 706(2)(F) does not apply to her case, a judicial declaration of her citizenship (or lack thereof) would be inappropriate.

6

U.S. 276 (1922), and continuing through to Frank v. Rogers, 253 F.2d 889 (D.C. Cir. 1958), militate in favor of de novo review in the citizenship context. See Pl.'s Opening Br. at 3–5, 8–10. But, as the government points out, see Gov't Reply Br. at 2, those cases are inapposite. In Ng Fung Ho, decided before the APA was enacted, the Supreme Court held that individuals inside the United States, subject to deportation proceedings, had to be afforded a de novo judicial determination of their citizenship before they could be deported because a deportee's lack of citizenship was an "essential jurisdictional fact." Ng Fung Ho, 259 U.S. at 282–84. In other words, if a potential deportee was a U.S. citizen, then the government had no jurisdiction to initiate deportation proceedings. Id. The result in Ng Fung Ho was thus dictated not by the "gravity of the [citizenship] question at stake," as Gonzalez Boisson suggests, see Pl.'s Opening Br. at 3, but rather by the Court's concern that the government might unlawfully deport a U.S. citizen. The lone D.C. Circuit case she cites as support, Frank, arose in a similar deportation context and relied upon the same "essential jurisdictional fact" analysis. See Frank, 253 F.2d at 890 (citing Ng Fung Ho and concluding that de novo determination of citizenship was required because "the issue of citizenship" went to the "heart of the administrative proceeding, the agency's very jurisdiction").[3]

Gonzalez Boisson's reliance on these cases is unpersuasive for two reasons. First, the D.C. Circuit now regards the "jurisdictional fact" doctrine as "discredited," see United States v. Hubbell, 167 F.3d 552, 558 (D.C. Cir. 1999),[4] and as both Ng Fung Ho and Frank—a 98-year-old case and a 62-year-old case, respectively—rely almost entirely on that doctrine, it is unclear whether they remain good law. Second, even taking those cases on their own terms, immigration

---

[3] The other Supreme Court case that she cites as belonging to this line of cases, Agosto v. Immigr. & Naturalization Serv., 436 U.S. 748 (1978), also involved deportation and relied upon Ng Fung Ho, see id. at 752–54.

[4] The Hubbell court explained that the doctrine has significant "logical errors" and that "as almost any issue could be characterized as a jurisdictional . . . one, [application of the doctrine] could swallow deference [to agencies] whole." Id. at 558 & n.3 (citation omitted).

7

law in effect at the time permitted the government to deport someone "only if the person arrested is an alien." Frank, 253 F.2d at 890 (quoting Ng Fung Ho, 259 U.S. at 284). Here, there is no equivalent requirement that the government may revoke someone's passport only if they are an alien, or indeed that the government make any conclusive citizenship determination at all. Instead, the relevant regulation permits the government to revoke a passport where "[t]he passport was illegally, fraudulently or erroneously obtained from the [government]; or was created through illegality or fraud practiced upon the [government]." 22 C.F.R. §51.62(a)(2). In its revocation decision here, the government stated that the basis for revocation was that it had discovered an inconsistency between two sworn statements from Gonzalez Boisson's mother bearing on Gonzalez Boisson's citizenship, which led the government to conclude that the passport had been obtained fraudulently. See Revocation Letter at 1–2. Gonzalez Boisson's citizenship was not an "essential jurisdictional fact" for that decision; therefore, the Ng Fung Ho line of cases does not help her. Accordingly, the Court concludes that she is not entitled to a judicial determination of her citizenship.

For the foregoing reasons, it is hereby

**ORDERED** that the Court's review in this case shall be limited to the administrative record; it is further

**ORDERED** that Gonzalez Boisson is not entitled to a judicial determination of her citizenship in this litigation; and it is further

**ORDERED** that the parties shall file a joint status report containing a proposed briefing schedule by not later than August 7, 2020.

**SO ORDERED**.

8

_____
/s/
JOHN D. BATES
United States District Judge

Dated: July 29, 2020