# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19-5358

September Term, 2021

FILED ON: DECEMBER 3, 2021

RAYMOND A. LONG, M.D.,
          APPELLANT

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,
          APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00458)

Before: ROGERS and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the United States District Court for the District of Columbia be affirmed.

## I.

The Health Care Quality Improvement Act, 42 U.S.C. §§ 11101–52, implements mandatory peer review and reporting requirements for health care entities, *id.* §§ 11131–33. One component of the Act's review-and-report scheme requires health care entities to file an "adverse action report" with the U.S. Department of Health and Human Services ("HHS") whenever the entity "accepts the surrender of clinical privileges of a physician . . . while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct." *Id.* § 11133(a)(1)(B). Adverse action reports are published on HHS's National Practitioner Data Bank ("NPDB"). 45 C.F.R. § 60.12(a)(1).

A physician who is the subject of an adverse action report may request that HHS review "the accuracy of the reported information" included in the challenged report. *Id.* § 60.21(c)(1); *see also* 42 U.S.C. § 11136(2). HHS's review is limited to "accuracy," and does "not consider the merits or appropriateness of the action or the due process that the" reported physician received. 45 C.F.R. § 60.21(c)(1). HHS may revise or void a report that it determines to contain inaccurate information or to address an unreportable adverse action. *Id.* § 60.21(c)(2)(ii), (iv).

## II.

Appellant Raymond A. Long is an orthopedic surgeon who held clinical privileges at Northwestern Medical Center in St. Albans, Vermont (the "Hospital" or "NMC") beginning in September 2001. In late 2003, he performed five shoulder surgeries at the Hospital that resulted in post-operative infections. Dr. Long believed that his patients had been intentionally infected by an unknown Hospital agent in retaliation for his plan to provide MRI services at his own off-site clinic in competition with the Hospital. Dr. Long implemented a series of corrective steps in his surgical procedures designed to prevent future infections. These steps conflicted with Hospital protocol.

Responding to concerns raised by Hospital staff about Dr. Long's conduct, the Hospital convened an Ad Hoc Committee to investigate. The Committee unanimously concluded that "ample evidence" showed Long had acted "in a confrontational manner," caused disruptions that "undermine[d] the appropriate team approach to patient care," and inappropriately "caus[ed] staff to deviate from established [operating room] protocol." Ltr. of Joseph Salomone, M.D., Chair, NMC Surgical Serv. Ad Hoc Comm., to James Duncan, M.D., Chair, NMC Med. Exec. Comm. (Mar. 16, 2004) 1. Based on these findings and additional review, the Hospital's Medical Executive Committee recommended that Dr. Long (1) "undergo a psychiatric evaluation" and (2) refrain from "perform[ing] any surgical procedures" pending completion of the Committee's review, and that (3) his charts and incidents of post-operative infection at the Hospital be subject to "external quality assurance review." Mem. to Steve Stata, Chair, NMC Bd. of Dirs., from NMC Med. Exec. Comm. (Apr. 5, 2004) 1–2.

The Hospital informed Dr. Long of these recommendations and notified him that his failure to comply would "result in a summary suspension" of his clinical privileges. Ltr. of Peter Hofstetter, NMC CEO, to Dr. Long (Apr. 6, 2004) 1. Dr. Long was advised of his opportunity to request a hearing. The following day, Dr. Long resigned from the Hospital, effective immediately. Pursuant to the Act, the Hospital filed an adverse action report with the NPDB stating Dr. Long had "voluntar[ily] surrender[ed]" his "clinical privilege(s), while under, or to avoid, investigation relating to professional competence or conduct." NPDB Adv. Actn. Rep't, Long (Apr. 30, 2004) 2. This incident, in the Hospital's view, was a reportable event under the Act as an acceptance of Dr. Long's "surrender of clinical privilege(s)" while he was under an investigation related to his professional conduct. *Id.*; *see* 42 U.S.C. § 11133(a)(1)(B).

More than seven years later, in 2011, Dr. Long requested that HHS void the adverse action report as his resignation was not a reportable event because it was not tendered during an investigation into his professional conduct. After reviewing Long's submission and

documentation supplied by the Hospital, HHS denied Dr. Long's request, concluding "ample evidence" showed that the Hospital was investigating Dr. Long's conduct when he resigned. Ltr. of Judy Rodgers, M.H.A., Sen'r Adv'r, Div. of Prac. Data Banks, HHS, to Dr. Long (Feb. 27, 2012) 4.

In February 2018, Dr. Long filed suit, seeking review of HHS's 2012 denial under the Administrative Procedure Act. In July 2018, he asked HHS to reconsider its decision, and submitted new evidence. As relevant, Dr. Long argued that the Hospital's investigation of him was a "sham" peer review meant to penalize him for attempting to compete with the Hospital for MRI services. Req. for Recons. (July 9, 2018) 77–78. He further argued before HHS and in the district court that the Hospital "deliberately infected [his] patients by contaminating his surgical irrigation solutions" to create a pretext for an investigation. Appellant's Br. 10. In Dr. Long's view, the investigation therefore was unrelated to his professional conduct or competence, and his resignation was not a reportable event. The district court stayed proceedings pending HHS's reconsideration decision.

In September 2018, HHS denied Long's reconsideration request, concluding the Hospital's investigation was ongoing when Dr. Long resigned and Dr. Long's argument the investigation was a "sham" was outside the scope of HHS's "accuracy" review. HHS Denial of Recons. (Sept. 26, 2018) 7. Even so, HHS considered the new information and found that his evidence "did not establish that the peer review was a sham," and that "there was no basis to conclude that the report should not have been filed or that for [HHS's] purposes it was not accurate, complete, timely or relevant." *Id.* at 8.

The parties filed cross-motions for summary judgment once the district court lifted the stay. Several months later, Dr. Long filed a motion to supplement the administrative record with a declaration by a purported expert in peer review activity. The district court granted HHS's motion for summary judgment and denied Long's motions for summary judgment and to introduce extra-record evidence. *Long v. HHS*, 422 F. Supp. 3d 143, 157 (D.D.C. 2019). The court concluded that HHS was not arbitrary and capricious in determining that the adverse action report accurately stated that the Hospital's investigation of Dr. Long was related to his professional conduct. *Id.* at 149–52.

**III.**

Dr. Long raises two main contentions on appeal. <u>First</u>, he contends that the denial of reconsideration was arbitrary and capricious because HHS did not consider his claim that the adverse action report inaccurately stated that the Hospital's investigation of him was related to professional conduct. Such allegations fall within the scope of HHS's "accuracy" review under 45 C.F.R. § 60.21(c)(1). HHS responds that its "accuracy" review does not consider "whether a hospital's actions underlying an adverse action report are legitimate or appropriate." Appellees' Br. 24.

The adverse action report states that Dr. Long resigned during an investigation into his professional conduct. In its initial decision and on reconsideration, HHS in fact discussed the

relevant evidence that the Hospital had initiated its investigation because of Long's conduct and explained why this evidence demonstrated that the report was accurate. In view of the administrative record, this analysis suffices to show that HHS's decision was not unreasonable.

In any event, this court need not resolve the parties' differing interpretations of the scope of "accuracy" review under HHS's regulation at 45 C.F.R. § 60.21(c)(1). The district court understood Long to challenge the accuracy of the Hospital's representation that he voluntarily resigned in connection with an investigation "related to professional competence or conduct." *Long*, 422 F. Supp. 3d at 150 (internal quotation marks and alteration omitted). The court responded to that argument, and also to Dr. Long's argument that HHS was arbitrary and capricious because it failed to "make a finding, based on the facts in the record, concerning the[] issues" regarding the alleged sham investigation. *Id.* (internal quotation marks omitted). The court examined the administrative record in detail, finding that it supported the Secretary's denial of reconsideration. *See id.* at 150–52. Long's allegation that the investigation was a "sham" goes to the merits or appropriateness of HHS's action and is outside the scope of review, for by regulation HHS "will not consider the merits or appropriateness of the action," 45 C.F.R. § 60.21(c)(1).

To the extent that Long's challenge to the "accuracy" of the adverse action report included a challenge to the Secretary's alleged failure to consider evidence that he had proffered in support of reconsideration, the district court pointed to administrative record evidence regarding steps taken by the Hospital that undermined Dr. Long's theories of intentional retaliatory infection of his patients rather than a professional motive for investigating him. *See id*. These steps included an investigation into complaints by Hospital staff about Dr. Long's conduct and a peer review of post-surgical infections in his patients. *See id.*; HHS Denial of Recons. 7–8. The district court found that this record evidence outweighed the "speculations and piecemeal evidence" Dr. Long provided to HHS. *Long*, 422 F. Supp. 3d at 152. Dr. Long raised no objection to HHS's explanation under *SEC v. Chenery*, 318 U.S. 80 (1943).

Therefore, there is no basis for this court to conclude that the review of the record by HHS or the district court was insufficient, much less arbitrary and capricious.

Second, Long's contention that the district court abused its discretion by denying his request to supplement the administrative record with a declaration by a purported expert on peer review activity fares no better. A court reviewing agency action will "generally consider only 'information [that] the agency [had] when it made its decision.'" *Butte County v. Chaudhuri*, 887 F.3d 501, 506 (D.C. Cir. 2018) (alterations in original) (quoting *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014)). An exception available when a plaintiff "challenge[s] gross procedural deficiencies — such as where the administrative record itself is so deficient as to preclude effective review," *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010)), is inapplicable here. The district court found that "the record contain[ed] more than substantial evidence to support HHS's determination" that the adverse action report was accurate. *Long*, 422 F. Supp. 3d at 156. Long's new expert declaration was superfluous in view of the absence of evidence of a gross procedural deficiency, and the record evidence shows that the district court did not abuse its discretion in denying his motion.

5

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk