155 T.C. No. 4

UNITED STATES TAX COURT

MICHAEL VAN BEMMELEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19787-18W.                    Filed August 27, 2020.

In 2018 P submitted to the WBO of the IRS, pursuant to I.R.C. sec. 7623(b)(1), a Form 211, Application for Award for Original Information, making allegations against T. P's Form 211 referenced an earlier 2012 submission relating to T and several other taxpayers. P's claim was forwarded to a classifier in the WBO and then assigned for review to a classifier in the IRS LB&I. On the basis of the latter's recommendation, in 2018 the WBO rejected P's claim for an award because "the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws." After P petitioned this Court, R moved for summary judgment under Rule 121 and submitted a certified administrative record, not including the 2012 submission. P moved to supplement the administrative record with two items: (1) the 2012 submission, and (2) a document reflecting a presentation that P made to IRS Criminal Investigation Division agents in 2019 (2019 document).

Held: In order to overcome the presumption that R has properly designated the administrative record, P must make a substantial showing with clear evidence.

Held, further, because P has made a substantial showing with clear evidence that his 2012 submission is properly included in the administrative record, P's motion to supplement the record will be granted insofar as it relates to the 2012 submission.

Held, further, because P has not demonstrated that the 2019 document meets any exception for consulting extrarecord evidence, see City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010), P's motion to supplement the record will be denied insofar as it relates to the 2019 document.

Held, further, because the law provides that, in analyzing information received from an individual, the WBO "in its sole discretion, may ask for additional assistance from such individual or any legal representative", Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(C), 120 Stat. at 2960, and the statute provides no meaningful standard against which to judge the WBO's exercise of that discretion, the WBO's exercise of discretion in not asking for additional assistance from P or his attorney is immune from judicial review.

Held, further, the WBO Director did not improperly redelegate his authority to analyze P's information.

Held, further, because the WBO's rejection of P's claim is supported by the administrative record, as completed, and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, R's motion for summary judgment will be granted.

Michael Van Bemmelen, pro se.

Nicole M. Connelly, for respondent.

OPINION

THORNTON, Judge: Petitioner initiated this action under section 7623(b)(4) seeking review of a determination by the Internal Revenue Service (IRS) Whistleblower Office (WBO) rejecting his claim for an award.[1] Pending before the Court are (1) respondent's motion for summary judgment, filed July 12, 2019, (2) petitioner's motion to supplement the record, filed March 2, 2020, and (3) petitioner's first supplement to motion to supplement the record, filed March 2, 2020. As discussed below, we will grant in part and deny in part petitioner's motion to supplement the record, as supplemented, and we will grant respondent's motion for summary judgment.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are drawn from the pleadings and motion papers, including two declarations and the exhibits attached thereto, and the administrative record as certified by respondent and as completed in this proceeding.

On March 12, 2018, Linda J. Stengle, Esq., submitted to the WBO on petitioner's behalf a Form 211, Application for Award for Original Information. Ms. Stengle's cover letter states:

> This office represents Dr. Michael Van Bemmelen [petitioner] in his whistleblower reward claim for a most egregious tax evasion scheme perpetrated by * * * [the named target taxpayer]. Through this letter, I am hoping to obtain the correct claim number for this potential corporate defendant and/or verify that the appropriate form has been received by the Service. An executed 211 form is enclosed should this not be the case.
>
> Dr. Van Bemmelen uncovered this complicated tax evasion scheme and first reported details of the scheme to the Service prior to 2012. Since then, Dr. Van Bemmelen supplemented his original report with more details to the Service, including details about other potential taxpayer defendants. Over time, Dr. Van Bemmelen supplemented his original report with more details to the service, including details about other potential taxpayer defendants. Over time, Dr. Van Bemmelen submitted additional Forms 211 to ensure that his rights to a potential whistleblower award for this potential taxpayer defendant are protected.

After first reporting the misconduct to the IRS prior to and again in 2012 as well as 2016, Dr. Van Bemmelen also reported the scheme to * * * [various U.S. and State attorneys general].

We also include Dr. Van Bemmelen's original reports from his 2016 submission with the form 211 with information about what has been reported to other government agencies about the potential taxpayer defendants after they were first reported to the IRS.

Enclosed with Ms. Stengle's March 12, 2018, letter is a Form 211, signed by petitioner on March 5, 2018, alleging income tax violations by the target taxpayer, a global insurance company (target). In response to the directive "Name and title and contact information of IRS employees to whom violation was first reported, if known" petitioner's Form 211 states: "Written claims submitted to IRS WO, October 2012. Verbal reports of violations to IRS beginning in 2004." On the Form 211, the boxes for "New submission" or "Supplemental submission" are both left unchecked. In response to the associated directive "If a supplemental submission, list previously assigned claim number(s)" petitioner's Form 211 states: "See attached history of claims."

Also enclosed with Ms. Stengle's March 12, 2018, letter is an undated 11-page document captioned "FORM 211 NARRATIVE". This document asserts that in his capacity as a financial adviser for international investment banks, petitioner had obtained information indicating that the target was a "co-

conspirator" in a complicated tax-evasion scheme involving investments in portfolios of life insurance policies. This document alleges that the target engaged in "money laundering" by providing funds and facilitating bank loans to a third-party "phantom tax exempt company, purportedly located in the U.S. Virgin Islands" which engaged in nonexempt arbitrage activity involving life insurance portfolios. According to this document, the third-party company and its affiliates improperly took advantage of U.S. Virgin Islands tax incentives for exempt activities and evaded hundreds of millions of dollars of taxes. The document also alleges that the target had borrowed funds which were used, through the mechanism of intercompany loans among certain of the target's affiliates, to purchase life insurance settlement policies on the secondary market and pay the premiums on the purchased policies. The document alleges that the target violated section 264(a) by deducting the interest incurred for financing secondary-market life insurance investments, thereby evading an estimated $858,082,500 of Federal taxes from 2001 through the third quarter of 2015.

Also enclosed with Ms. Stengle's March 12, 2018, letter to the WBO is an unsigned copy of a letter to the WBO dated March 1, 2016, "Re: New Claim". This earlier letter, much like Ms. Stengle's March 12, 2018, letter, indicates that she represented petitioner in his efforts to obtain IRS whistleblower awards on the

basis of his claim of tax evasion by the target. This letter, consistent with the "FORM 211 NARRATIVE" previously described, states that petitioner estimates the target's unpaid Federal tax to be "approximately $858,082,500". The letter goes on to state that details of this purported misconduct appear in "the attached Form 211 and Form 211 Narrative." The copy of the March 1, 2016, letter enclosed with Ms. Stengle's March 12, 2018, letter does not include any attached Form 211 or "Form 211 Narrative" apart from the Form 211 signed by petitioner on March 5, 2018, and the undated "FORM 211 NARRATIVE" previously described.

On March 21, 2018, the WBO received petitioner's Form 211 dated March 5, 2018. It was assigned claim No. 2018-006801. By letter dated April 3, 2018, addressed to petitioner c/o Ms. Stengle's law firm, the WBO acknowledged receiving this claim. By a separate letter to Ms. Stengle, also dated April 3, 2018, the WBO advised her that because she had failed to submit a valid Form 2848, Power of Attorney and Declaration of Representative, the WBO was required to communicate directly with petitioner about this claim.

Petitioner's claim was forwarded to a classifier in the WBO.[2]  On April 12, 2018, this classifier prepared a classification checklist memorandum, indicating petitioner's claim as arising under "IRC 7623(a)/(b)" and noting "[a]lleged amount in dispute is greater than $2,000,000".[3]  This memorandum indicates that the classifier:  "Researched ICE [Initial Claim Evaluation] claims since WB [whistleblower] referenced prior claims.  No claims located."[4]  The WBO classifier recommended that the claim be referred to the Large Business & International Division (LB&I) of the IRS for classification.  On April 13, 2018, petitioner's claim was referred to LB&I for classification.

By cover letter dated May 1, 2018, Ms. Stengle transmitted to the WBO a Form 2848 dated April 13, 2018, authorizing her to represent petitioner with

---

[2]A classifier is an IRS employee whose role is "to determine if the information on the Form 211 warrants further review."  Internal Revenue Manual (IRM) pt. 25.2.1.3.1(2) (May 28, 2020).

[3]Sec. 7623(b) applies to certain whistleblower claims where the proceeds in dispute exceed $2 million.  Sec. 7623(b)(5)(B).

[4]The Initial Claim Evaluation Unit (ICE) acts as the "primary receipt and control function responsible for performing whistleblower claim intake, monitoring, award processing, and responding to correspondence and telephone inquiries from internal and external customers."  IRM pt. 1.1.26.1.3.5(1) (Jan. 11, 2018).  Effective July 10, 2016, the IRS Small Business/Self-Employed Division was assigned "operational responsibility" for ICE while the WBO retained "procedural and policy oversight" of ICE.  Id. pt. 1.1.26.1.3.5.

regard to "Forms 211/Claim Number 2018-006801".  In a letter dated May 25, 2018, referencing claim No. 2018-006801, Ms. Stengle submitted a three-page "supplemental narrative" that offered a "short, step-by-step summary" of the "tax evasion scheme" purportedly perpetrated by the target.  This summary reiterated petitioner's claims that the target had sought to evade taxes by purchasing investments in the secondary life insurance market with borrowed funds and improperly deducting the interest.  Enclosed with this letter was a new Form 211, signed by petitioner on May 25, 2018, which indicated that it was a "supplemental submission" to claim No. 2018-006801.  This Form 211 left many lines blank and contained no information not found in petitioner's March 5, 2018, Form 211.

By letter dated July 9, 2018, referencing claim No. 2018-006801, the WBO acknowledged receiving the correspondence dated May 25, 2018, stating:  "Your claim is still open and under active consideration."

On September 7, 2018, petitioner's claim was assigned for review to Analisa Graves, a classifier in LB&I.  Ms. Graves prepared a classification checklist memorandum which states, among other things, that petitioner had alleged that the target had conspired "to evade millions in federal and local taxes" and that "[t]he estimated dollar amount of the tax liability is less than $2 million."  The memorandum classifies petitioner's claim as arising under "IRC 7623(a)",

noting that "[a]llegations meet 7623(a) criteria". In the memorandum Ms. Graves recommends that petitioner's claim be rejected on the basis that "[a]llegations are not specific, credible, or are speculative--[a]llegations are purely speculative in nature". The memorandum also states:

> The information obtained in this claim is referenced to the claimant's original claim (2012-003653). The original claim was determined to lack substance. The supplemental information provided in this claim does not have enough information to support the alleged violations. The claim should be rejected.

On September 11, 2018, Ms. Graves returned petitioner's claim to the WBO with her recommendation. On that same date, petitioner's claim was assigned to Jessica Robison in ICE. She received Ms. Graves' classification checklist memorandum and on September 11, 2018, prepared an Award Recommendation Memorandum (ARM), adopting the classifier's recommendations.

Also on September 11, 2018, respondent issued to petitioner a final determination letter captioned "FINAL DECISION UNDER SECTION 7623(a)". This letter states that the WBO had considered petitioner's Form 211 dated March 5, 2018, and had made "a final decision to reject your claim for an award." The letter goes on to state that petitioner's claim had been "rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."

The letter states that it "is a final determination for purposes of filing a petition with the United States Tax Court."

There is no evidence that the IRS ever commenced an action against, or collected proceeds from, the target as a result of the information petitioner supplied.

Petitioner timely petitioned this Court. On July 12, 2019, respondent filed a motion for summary judgment, supported by two unsworn declarations under penalty of perjury by Ms. Graves and Ms. Robison.

On August 12, 2019, petitioner filed his opposition to respondent's motion for summary judgment filed July 12, 2019. Also on August 12, 2019, petitioner filed a first supplement to opposition to motion for summary judgment, which includes as an exhibit a copy of a letter, dated December 12, 2012, from Ms. Stengle to the WBO, and an accompanying 20-page document captioned "IRS FORM 211 ATTACHMENT" (2012 submission). Ms. Stengle's December 12, 2012, letter references claim No. 2012-003656 and indicates that petitioner is resubmitting additional Forms 211 as relate to certain individuals and entities but does not reference the target.[5] The attached "IRS FORM 211 ATTACHMENT" lists 15 taxpayers (not including the target) as the subject of petitioner's

---

[5]The copy of the letter submitted by petitioner includes no Form 211.

whistleblower claim. It describes a "continuing misuse of USVI insurance company tax exemption" by certain named individuals and associated entities. This document provides additional background about the alleged "money laundering activities" as described in the "FORM 211 NARRATIVE" enclosed with Ms. Stengle's March 12, 2018, letter with respect to the target. The 2012 submission does not specifically allege tax evasion by the target, however, but concludes by stating that petitioner "will provide a future supplement detailing * * * [the target's] role in the * * * scheme once the Relator's [petitioner's] legal team concludes its analysis."

After additional briefing, on January 13, 2020, the Court ordered respondent to file a report, attaching thereto the administrative record in this case as compiled by the WBO. On February 10, 2020, respondent filed a status report, attaching thereto a certified copy of the administrative record.

On March 2, 2020, petitioner filed a motion to supplement the record, along with a first supplement to motion to supplement the record, requesting that the administrative record be supplemented with two items that are not included in the materials that respondent certified as the administrative record: (1) the 2012 submission, and (2) a document captioned "Corporate identity fraud and claim of U.S. Virgin Islands tax exemption", dated September 3, 2019, which represents,

according to petitioner's description of it, a presentation that he made to IRS Criminal Investigation Division agents on September 5, 2019, focusing on "the original claim [i.e., the claim reflected in Ms. Stengle's September 12, 2012, letter] and the role of * * * [the target's] affiliates in promoting and benefitting from the fraud" (2019 submission).

On March 13, 2020, respondent filed his response to the motion to supplement the record, as supplemented, opposing the granting of petitioner's motion. On April 7, 2020, petitioner filed a reply to that response.

## Discussion

A. Jurisdiction

Section 7623(a) authorizes the Secretary to pay discretionary whistleblower awards from collected proceeds. Section 7623(b) makes whistleblower awards mandatory if certain statutory requirements are met. One of the requirements is that the proceeds in dispute exceed $2 million. Sec. 7623(b)(5). Section 7623(b)(4) gives the Tax Court jurisdiction over "[a]ny determination regarding an award under paragraph (1), (2), or (3)" of subsection (b), including rejections and denials of claims for awards. See Lacey v. Commissioner, 153 T.C. 146, 163 (2019).

The final determination letter upon which this case is predicated is captioned "FINAL DECISION UNDER SECTION 7623(a)".[6]  Although it does not expressly refer to section 7623(b), it rejects petitioner's claim for an award and states that this "is a final determination for purposes of filing a petition with the United States Tax Court", thereby implicitly acknowledging that this is a determination under section 7623(b).  We conclude that we have jurisdiction over this case.  See Lippolis v. Commissioner, 143 T.C. 393, 396 n.2 (2014) ("Denying a whistleblower's claim under sec. 7623(b) without saying so does not deprive this Court of jurisdiction.").

B.  Standard and Scope of Review

In reviewing a determination of the WBO, we employ the standard of review of section 706(2)(A) of the Administrative Procedure Act (APA), which tells a reviewing court to reverse agency action that it finds "arbitrary, capricious,

_____

[6]As discussed infra note 15 and the associated text, this characterization of petitioner's claim as arising under sec. 7623(a) appears consistent with the directives of IRM pt. 25.2.2.7.1(2) (Jan. 12, 2018), regarding the treatment of claims that are rejected as speculative.  Although we find those directives instructive in understanding the procedures the IRS expects its employees to follow, see Wadleigh v. Commissioner, 134 T.C. 280, 294 n.13 (2010), the IRM does not have the force of law, see Marks v. Commissioner, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), aff'g T.C. Memo. 1989-575; Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987).  Consequently, we do not regard those IRM directives or the characterization of petitioner's claim based on those directives as determinative of our jurisdiction.

an abuse of discretion, or otherwise not in accordance with law." Kasper v. Commissioner, 150 T.C. 8, 21 (2018).  We do not substitute our judgment for that of the agency but instead confine ourselves to ensuring that its determination "remained 'within the bounds of reasoned decisionmaking'".  Dep't of Commerce v. New York, 588 U.S. ___, ___, 139 S. Ct. 2551, 2569 (2019) (quoting Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc., 462 U.S. 87, 105 (1983)).  In the course of our review, we cannot compel the IRS to commence an audit or to provide an explanation of its decision not to commence an audit.  See Cohen v. Commissioner, 550 F. App'x 10, 11 (D.C. Cir. 2014), aff'g 139 T.C. 299 (2012); Lewis v. Commissioner, 154 T.C. ___, ___ (slip op. at 22) (Apr. 8, 2020).

In reviewing a determination of the WBO, we generally confine our review to the administrative record.  Kasper v. Commissioner, 150 T.C. at 20; see James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (noting that under well-settled principles of administrative law, courts ordinarily confine their review of agency determinations to the administrative record as submitted by the agency).  The administrative record in a whistleblower case normally is expected to include "all information provided by the whistleblower (whether provided with the whistleblower's original submission or through a subsequent contact with the IRS)."  Sec. 301.7623-3(e)(2)(i), Proced. & Admin. Regs.  The

information that a whistleblower provides to the IRS' operating divisions before submitting a Form 211 to the WBO may be relevant to the whistleblower's claim for an award. See Whistleblower 21276-13W v. Commissioner, 144 T.C. 290 (2015).

C. Petitioner's Motion To Supplement the Record, as Supplemented

Petitioner's motion to supplement the record, as supplemented, requests that the administrative record be "supplemented" with two items: (1) the 2012 submission and (2) the 2019 submission.

An administrative record may be "supplemented" in one of two ways, "either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." Animal Legal Def. Fund v. Vilsack, 110 F. Supp. 3d 157, 160 (D.D.C. 2015) (quoting WildEarth Guardians v. Salazar, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009)). Petitioner's motion conflates these two types of record "supplementation": It requests the Court to include certain omitted evidence in the administrative record as well as to review certain evidence that is outside or in addition to the administrative record. As discussed more fully below, these are separate types of requests and subject to distinct

standards.  See Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 78 (D.D.C. 2018) ("[C]onfusion has arisen because the term 'supplement' 'has been used synonymously to refer to both a circumstance in which a party argues that the administrative record does not actually reflect the materials that the agency had before it when it made its decision, and a circumstance in which a party seeks to add extra-record or extra-judicial information to the record that was concededly not before the agency.'" (quoting Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 151 F. Supp. 3d 1, 13 (D.D.C. 2015))); see also Univ. of Colo. Health v. Azar, ___ F. Supp. 3d ___, 2020 WL 1557134, at *5 (D.D.C. Mar. 31, 2020) (discussing different standards that apply for the two types of record "supplementation"); Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 316-317 (D.D.C. 2016), aff'd sub nom. Oceana, Inc. v. Ross, 920 F.3d 855 (D.C. Cir. 2019).

### 1.  Request To Include Omitted Evidence in the Administrative Record

Petitioner requests that we include the 2012 submission in the administrative record.  He urges that the administrative record is incomplete without the 2012 submission because information submitted with respect to the claim on which this case is predicated was "supplemental" to his 2012 submission and all these materials should be considered together.

Respondent counters that the 2012 submission is not properly included in the administrative record because the WBO did not consider the 2012 submission in rejecting petitioner's claim. Respondent asserts that petitioner's 2012 submission was associated with six different taxpayers and assigned six different claim numbers by the WBO, which eventually denied all of these claims at various times from 2012 to 2015.

Absent a substantial showing made with clear evidence to the contrary, an agency is presumed to have properly designated the administrative record. See Oceana, Inc. v. Ross, 920 F.3d at 865 ("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993))); see also Latif v. Obama, 677 F.3d 1175, 1178 (D.C. Cir. 2011) (describing the showing required to overcome the presumption of regularity as one made by "clear evidence"); Nat. Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975) (finding that the plaintiff had made a "substantial showing" that the entire administrative record had not been filed with the reviewing court). As one court has explained:

> A court should generally consider neither more nor less than what was before the agency at the time it made its decision. This means the agency must compile all the information it considered directly or

indirectly. However, it is the responsibility of the deciding agency to compile the administrative record, and the agency is presumed to have properly done so.

In order for a Court to order supplementation, the plaintiff must overcome this strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers. There should be nothing controversial about this proposition. If for some reason, materials that were actually a part of the agency's record were not properly included, whether by design or accident, they should be included in the record for the Court's review. It is only the court's deference to the agency's compilation that counsels pause. If it can be shown that the materials sought to be included in the record before the court, were indeed before the agency, supplementation is appropriate. * * *
[Citations omitted.]

Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior, 667 F. Supp. 2d 111, 114 (D.D.C. 2009); see also Sara Lee Corp. v. Am. Bakers Ass'n, 252 F.R.D. 31, 33-36 (D.D.C. 2008).

The mere fact that the WBO possessed the 2012 submission at the time of its decision does not mean that the 2012 submission should necessarily become part of the administrative record in this case. See Butte Cty., Cal. v. Chaudhuri, 887 F.3d 501, 507 (D.C. Cir. 2018). If, however, before the WBO made its determination petitioner brought the 2012 submission to the WBO's attention with respect to the claim that is the subject of the instant case, then the 2012 submission

is properly part of the administrative record.  See id.; see also sec. 301.7623-3(e)(2)(i), Proced. & Admin. Regs

Both the Form 211 that petitioner submitted in March 2018 and Ms. Stengle's cover letter referenced petitioner's 2012 submission.  Indeed, in response to the directive "Name and title and contact information of IRS employees to whom violation was first reported, if known" petitioner's Form 211 states:  "Written claims submitted to IRS WBO, October 2012."  Moreover, Ms. Graves' classification checklist memorandum , as incorporated in the ARM, states:

> The information obtained in this claim is referenced to the claimant's original claim (2012-003653).  The original claim was determined to lack substance.  The supplemental information provided in this claim does not have enough information to support the alleged violations.

These statements, coupled with the contents of petitioner's Form 211, constitute a substantial showing made with clear evidence that the 2012 submission is properly part of the administrative record.  Accordingly, we will grant petitioner's motion to supplement the record, as supplemented, insofar as it seeks to complete the record with the 2012 submission.

2.  Request to Permit Consideration of Extrarecord Evidence

In asking us to supplement the administrative record to include the 2019 submission, petitioner is asking us to consider evidence that was not (and could

not) have been before the WBO when it made its decision in 2018. Although it is sometimes appropriate to consider extrarecord information, this "is the exception, not the rule." Theodore Roosevelt Conversation P'ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010). The Court of Appeals for the D.C. Circuit has "recognized a small class of cases where district courts [or, as here, the Tax Court] may consult extra-record evidence when 'the procedural validity of the [agency]'s action . . . remains in serious question'". Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989)). That Court of Appeals has most recently identified three circumstances in which extrarecord evidence may be consulted:[7]

---

[7]In Kasper v. Commissioner, 150 T.C. 8, 20-21 (2018), we noted a longer list of exceptions as summarized in Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989). However, as the District Court for the District of Columbia has recently observed:

> [T]he "trend" in the D.C. Circuit has been "towards limiting the circumstances in which district courts may consider evidence outside the administrative record[.]" United Student Aid Funds, Inc. v. Devos, 237 F. Supp. 3d 1, 4 (D.D.C. 2017). In Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989), the Circuit recognized eight "exceptions countenancing use of extra-record evidence." Id. at 991. Since then, the Circuit has gradually winnowed the number of circumstances in which courts may consider extra-record evidence to three. * * *

Oceana, Inc. v. Ross, No. 17-CV-829 (CRC), ___ F. Supp. 3d ___, 2020 WL 1905148, at *3 n.5 (D.D.C. Apr. 17, 2020) (citing City of Dania Beach v. FAA,

(continued...)

(1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information was needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review" * * *

City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008)); James Madison Ltd. by Hecht, 82 F.3d at 1095.

Petitioner has not demonstrated that the 2019 submission meets any such exception to the general rule limiting our review to the administrative record. Accordingly, we will deny petitioner's motion to supplement the record, as supplemented, insofar as it relates to the 2019 submission. See Kansky v. Commissioner, T.C. Memo. 2020-43, at *6-*7 (declining to supplement the administrative record with a newspaper article that post-dated the WBO's determination).

In his motion to supplement the record, as supplemented, petitioner alleges, without meaningful support or basis, intentional and systemic efforts by the WBO to undermine the whistleblower laws by wrongfully suppressing and denying

---

[7](...continued) 628 F.3d 581, 590 (D.C. Cir. 2010)); see also Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013) ("Esch has been given a limited interpretation since it was decided[.]").

whistleblower awards.  Although petitioner's motion to supplement the record, as supplemented, does not expressly ask us to supplement the record with anything other than the 2012 submission and 2019 submission, it seems to contemplate discovery and evidentiary hearings to develop additional extrarecord evidence. For instance, petitioner's motion indicates that to enable him to prove intentional abuse of discretion, the record should include "sworn testimony from persons familiar with the intentions of the WBO managers" and data on "[r]espondent's behavior over time" in suppressing whistleblower awards.  Petitioner argues: "Limiting the record to one case and precluding sworn depositions by WBO employees is prejudicial to petitioner's allegation of intentional wrongdoing and systematic undermining of the whistleblower laws by Respondent and/or their employees."

The Supreme Court has declared that "where there are administrative findings that were made at the same time as the decision * * * there must be a strong showing of bad faith or improper behavior before such inquiry [into the mental processes of administrative decisionmakers] may be made." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) (emphasis added). Petitioner has failed to make any such strong showing.  His allegations are not based on any meaningful documentation or other support but instead are based on

inferences, speculation, and conjecture. As the Court of Appeals for the D.C. Circuit has observed in somewhat analogous circumstances: "The ease with which accusations of impropriety can be made must be compared to the difficulty judges would face investigating such charges". Deukmejian v. Nuclear Regulatory Comm'n, 751 F.2d 1287, 1328 (D.C. Cir. 1984). We conclude that petitioner's allegations in this regard lack the requisite degree of specificity to warrant discovery or evidentiary hearings to supplement the record. See id. Accordingly, insofar as petitioner's motion to supplement the record, as supplemented, might be thought to seek supplementation of the record with additional unspecified extrarecord evidence, it will be denied.

D. Respondent's Motion for Summary Judgment

    1. Summary Judgment Standard

Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a) and (b); Naftel v. Commissioner, 85 T.C. 527, 528-529 (1985). Ordinarily, under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.[8] Sundstrand Corp. v. Commissioner, 98 T.C.

---

[8]The standard of review set forth in Rule 121(b) is modeled after that contained in Fed. R. Civ. P. 56(a) (formerly Fed. R. Civ. P. 56(c)).

518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  However, this summary judgment standard is not generally apt where we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion.[9]

---

[9]As explained in Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007):

> Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006).  Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  See Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-770 (9th Cir.1985); see also Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of th[e] matter does not require fact finding on behalf of this court.  Rather, the court's review is limited to the administrative record."). * * *

See also Green Tech. Grp., LLC v. United States, 147 Fed. Cl. 231, 239 (2020) ("Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the Administrative Record.") (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)); Huashan Zhang v. USCIS, 344 F. Supp. 3d 32, 45 (D.D.C. 2018) ("[D]ue to the limited role of a court in

(continued...)

The purpose of summary judgment is to avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). We deny a summary judgment motion where there is a genuine factual dispute that requires a trial; but in a "record rule" whistleblower case there will not be a trial on the merits. In such a case involving review of final agency action under the APA, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) ("[T]he question whether * * * [an agency] acted in an arbitrary and capricious manner is a legal one which the district court [or, as here, the Tax Court] can resolve on the agency record-- regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment[.]"); Ctr. for Food Safety v.

---

[9](...continued)
reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56(c) are not applicable."). However, we evidently cannot say that conventional summary judgment analysis is never appropriate in a record rule case decided on an abuse-of-discretion standard. See AstraZeneca Pharm. LP v. FDA, 713 F.3d 1134, 1139 (D.C. Cir. 2013) (stating that a reviewing court "must allow summary judgment for the agency" unless the party appealing the agency action "can demonstrate by record evidence that 'a genuine dispute' exists as to some material fact supporting the proposition that the * * * [agency's] actions under review were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'").

Salazar, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

2. Analysis

The central premise of respondent's motion for summary judgment is that the WBO's final determination must be sustained because, he says, this Court's authority under section 7623(b)(4) is limited to ascertaining whether the IRS proceeded with an action and collected proceeds as a result of the whistleblower's information. Although the WBO's rejection of a claim necessarily precludes any subsequent administrative or judicial action against any taxpayer and any subsequent collection of proceeds from the taxpayer based on the information provided, the WBO's rejection of a claim does not preclude judicial review. See Lacey v. Commissioner, 153 T.C. at 161-162. This Court has authority to review, for abuse of discretion, the WBO's decision to "reject" a claim for failing to meet threshold requirements. Id. at 166-167. Moreover, as was true in Lacey, the WBO's final determination said nothing about the presence or absence of "administrative action" or "proceeds" but rather stated that the claim was rejected "because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws." Because those were the grounds invoked by the agency (and not

"administrative action" or "proceeds"), those are the grounds we must consider as we review the WBO's determination. See id. at 165 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

The WBO is charged with making the initial evaluation of whistleblower claims to determine whether they meet the minimum standards for an award. See sec. 301.7623-1(c)(4), Proced. & Admin. Regs. The threshold criteria include that a claim should:

- "contain specific * * * information";

- "contain * * * credible information";

- provide "information that the whistleblower believes will lead to collected [tax] proceeds";

- report "fail[ure] to comply with the internal revenue laws";

- "identify the person(s) believed to have failed to comply with the internal revenue laws";

- "provide substantive information, including all available documentation"; and

- not "provide speculative information".

See Lacey v. Commissioner, 153 T.C. at 160 (quoting sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.).

If a claim fails to meet those criteria, then the WBO may summarily "reject" the claim without further consideration. "A rejection is a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." Sec. 301.7623-3(c)(7), Proced. & Admin. Regs.

The administrative record shows that the WBO received and reviewed petitioner's claim before forwarding it to Ms. Graves, a classifier in LB&I, for further review. Ms. Graves reviewed petitioner's claim and noted that it referenced an earlier 2012 submission which had been "determined to lack substance. The supplemental information provided in this claim does not have enough information to support the alleged violations." Ms. Graves recommended that petitioner's claim be rejected on the basis that the "[a]llegations are not specific, credible, or are speculative--[a]llegations are purely speculative in nature." The WBO accepted Ms. Graves' recommendation and issued its determination rejecting petitioner's claim because "the information provided was speculative and/or did not provide specific or credible information regarding tax

underpayments or violations of internal revenue laws."[10]  We conclude that the WBO did not abuse its discretion in rejecting petitioner's claim on this rationale.

The narrative attached to the Form 211 that petitioner submitted in 2018 alleged essentially two types of claims.  First, petitioner alleged that the target had engaged in "money laundering activities" with a third-party company that allegedly abused U.S. Virgin Islands tax incentives.  Petitioner's "money laundering" claim, however, is speculative in key respects.  Moreover, it fails to make clear whether it means to signify some violation of the tax laws by the target itself (rather than by the third-party company or some other taxpayer) and consequently whether the information about the alleged "money laundering" scheme would be credibly thought to lead to collecting tax proceeds from the target itself (rather than from the third-party company or some other taxpayer). The grounds articulated by the WBO for rejecting this claim are warranted on the basis of the information that petitioner provided.

---

[10]This Court has previously faulted this sort of and/or formulation as lacking clarity.  See, e.g., Lacey v. Commissioner, 153 T.C. 146, 170 (2019); Alber v. Commissioner, T.C. Memo. 2020-20, at *8 n.5.  The record is clear, however, that in classifying petitioner's claim Ms. Graves explicitly premised her recommended rejection of the claim on conclusions both that his allegations were "purely speculative" and that "the claim does not have enough information to support the alleged violations."  The ARM adopted these recommendations.  Accordingly we review whether the WBO abused its discretion in rejecting petitioner's claim under these rationales.

As discussed above, we have granted petitioner's request to supplement the administrative record with the 2012 submission, which contains additional background information about the alleged "money laundering" activity. These materials, however, do not overcome the noted infirmities in petitioner's claim as they relate to the target. In fact, the 2012 submission does not even specifically allege tax evasion by the target but merely states that petitioner "will provide a future supplement detailing * * * [the target's] role in the * * * scheme once the Relator's [petitioner's] legal team concludes its analysis." In his 2018 submission, as foretokened in his 2012 submission, petitioner did in fact provide supplemental information about the target's alleged role in the alleged scheme. The classifier reviewed the more complete information provided in petitioner's 2018 submission and determined that it failed to provide sufficient information to support his claim about the target. We find no abuse of discretion in this determination.[11]

_____

[11]Where the administrative record is found to be insufficient, this Court may remand a case to the WBO for reconsideration. See Whistleblower 769-16W v. Commissioner, 152 T.C. 172 (2019). In the circumstances of the instant case, we conclude that remand is unnecessary and would be unproductive. Even if the classifier failed to consider the 2012 submission in making her determination, we believe that any error in this regard was harmless. As noted, the 2012 submission contains no specific allegations about the target that would affect the classifier's analysis or determination, as made on the basis of the more specific allegations provided in the 2018 submission, that petitioner's "money laundering" claims, as they relate to the target, were speculative. In these circumstances, we do not

(continued...)

As part of his whistleblower claim, petitioner also alleged that the target improperly deducted interest on borrowed funds that petitioner alleged were used to finance secondary-market life insurance investments. Petitioner alleged that these deductions violated section 264 and resulted in tax underpayments of nearly $1 billion. Once again, the facts that petitioner alleged appear speculative in key respects. Moreover, it is basically indeterminate, on the basis of the alleged facts, whether the target actually violated section 264, as petitioner's claim asserts.[12] The grounds articulated by the WBO for rejecting this claim are warranted on the basis of the information that petitioner provided to the WBO.

---

[11](...continued)
believe that petitioner was prejudiced or that it would make sense to remand this case to the WBO for reconsideration of its determination in the light of the 2012 submission. See PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) ("If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.").

[12]Sec. 264(a)(3) generally provides that no deduction is allowed for amounts paid or accrued on indebtedness incurred to purchase a life insurance contract if the debt was incurred pursuant to a plan of purchase which contemplates the systematic borrowing of increases in the cash value of the insurance contract. Sec. 264(a)(3) is inapplicable if no part of any four annual premiums due in the first seven-year period of an insurance contract is financed by means of indebtedness. Sec. 264(c)(1). Petitioner's allegations lack specific information to support a nonspeculative conclusion that the target's purported actions either meet the criteria for applying the general rule of sec. 264(a)(3) or fall outside the exception of sec. 264(c)(1).

### 3. WBO's Discretion To Limit Scope of Investigations

Petitioner complains that the WBO should have done more to investigate his claims. His petition assigns as error that "in view of the amount of tax evaded and amount of detail in the case, the IRS never followed up with either an interview of me or my attorney, or with any other mailed requests for information." The law expressly provides, however, that in analyzing information received from an individual, the WBO "in its sole discretion, may ask for additional assistance from such individual or any legal representative". Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(C), 120 Stat. at 2960 (emphasis added). Because the WBO's actions in this regard are committed to its "sole discretion", and the statute provides no meaningful standard by which to judge the WBO's exercise of that discretion, those actions are immune from judicial review. See 5 U.S.C. sec. 701(a)(2) (2012) (precluding judicial review of agency actions "committed to agency discretion by law"); see also Heckler v. Chaney, 470 U.S. 821, 830 (1985) (under 5 U.S.C. sec. 701(a)(2) "review is not to be had" in those rare circumstances where the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

Similarly, the petition assigns as error that petitioner's allegations against the target are "so appalling and detailed, that in-depth consideration is warranted." As this Court has explained, however:

> It is not to the Tax Court but to the Secretary of the Treasury that Congress has given the authority to "make the inquiries, determinations, and assessments of all taxes", sec. 6201, and to "collect the taxes", sec. 6301. The Tax Court has no practical means for evaluating the IRS's audit priorities, its allocation of its audit resources, or its judgments about the likelihood of collecting particular liabilities. * * * Consequently, "we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim and * * * we have no authority to require the IRS to explain a decision not to audit." Lacey v. Commissioner, 153 T.C. at ___ (slip op. at 30).

Cline v. Commissioner, T.C. Memo. 2020-35, at *15 (fn. refs. omitted).

4. Alleged Procedural Irregularities

In opposing respondent's motion for summary judgment, petitioner suggests that the IRS improperly failed to assign a claim number to his claim upon receipt of Ms. Stengle's March 1, 2016, letter and that the IRS failed to check whether the information purportedly submitted with that letter had been forwarded to the appropriate field office to be acted on. There is no evidence in the administrative record, however, that the WBO actually received the March 1, 2016, letter before March 21, 2018, when the WBO received petitioner's Form 211 dated March 5,

2018.[13]  Furthermore, even if the WBO did receive Ms. Stengle's letter in 2016, it is unclear whether she was authorized at that time to represent petitioner in his claim against the target.[14]  As noted, a copy of Ms. Stengle's March 1, 2016, letter was in fact attached to petitioner's 2018 submission, which was assigned a claim number upon receipt by the WBO.  In any event, there is no evidence that the IRS ever commenced an action against, or collected proceeds from, the target as a result of any information petitioner supplied.

Petitioner contends that certain statements in the classification checklist memorandum prepared by Ms. Graves are contradictory.  He notes that the classification checklist memorandum describes his claim as alleging that the target had conspired "to evade millions in federal and local taxes" (emphasis added) but goes on to state that "[t]he estimated dollar amount of the tax liability is less than

---

[13]The only copy of the March 1, 2016, letter in the administrative record is the unsigned copy attached to Ms. Stengle's March 12, 2018, letter to the WBO.  And although that copy of the March 1, 2016, letter alludes to a Form 211, the only Forms 211 in the administrative record are the Form 211 signed by petitioner on March 5, 2018, and the Form 211, signed by petitioner on May 25, 2018, which indicated that it was a "supplemental submission" to claim No. 2018-006801.

[14]After the WBO received petitioner's Form 211 dated March 5, 2018, it sent a letter to Ms. Stengle advising her that because she had failed to submit a valid Form 2848, the WBO was required to communicate directly with petitioner about this claim.  It was only subsequently that Ms. Stengle submitted to the WBO a Form 2848, dated April 13, 2018, authorizing her to represent petitioner with regard to his claim against the target.

$2 million" and that petitioner's "[a]llegations meet 7623(a) criteria". Petitioner contends that these purported inconsistencies show that respondent's employees were negligent and abused their discretion. We are not persuaded.

According to the Internal Revenue Manual (IRM), for purposes of classifying a claim as arising under section 7623(a) or (b), the whistleblower's description of the amount owed by the taxpayer is not determinative; even if the alleged amount exceeds $2 million, the claim is to be considered a section 7623(a) claim if "the claim does not identify a specific/credible tax issue or is purely speculative in nature." IRM pt. 25.2.2.7.1(2) (Jan. 12, 2018); cf. Smith v. Commissioner, 148 T.C. 449 (2017) (holding that the "amounts in dispute" referenced in the section 7623(b)(5)(B) threshold are the total amount of the liability that the Commissioner proposed with respect to a taxpayer's examination that was commenced using the information provided by a whistleblower). Having concluded that petitioner's claim was "purely speculative", the classifier acted in accordance with IRM directives in treating the proceeds in dispute as involving less than $2 million, so as to be characterized as a claim arising under section 7623(a).[15] Consequently, we conclude that the classifier did not act arbitrarily in

---

[15]As discussed supra note 6, the IRM lacks the force of law for purposes of determining, for jurisdictional purposes, whether petitioner's claim was properly
(continued...)

this regard. In any event, any error in this regard was harmless, as we have treated petitioner's claim as arising under section 7623(b) for purposes of our review.

5. WBO Director's Redelegation Authority

In his reply to respondent's response to petitioner's motion to supplement the record, as supplemented, petitioner argues for the first time that the WBO Director improperly redelegated his authority to analyze petitioner's information. Under Delegation Order 25-7 (Rev. 3), IRM pt. 1.2.2.14.7(8) (July 14, 2016), the Commissioner has delegated to the Director of the WBO the authority "to receive, analyze, and assign information pursuant to IRC § 7623". This delegation order goes on to state: "This authority to receive and assign is redelegated to employee of the Initial Claims Evaluation unit." Id. pt. 1.2.2.14.7(11). Petitioner suggests that because the power to "analyze" information is expressly listed in powers delegated to the Director of the WBO but is omitted from the list of powers that may be redelegated, only the Director is authorized to "analyze" whistleblower information. He argues that because respondent has not alleged, and the record

---

[15](...continued)
characterized as arising under sec. 7623(a). We find the IRM directives instructive, however, in showing that the classifier acted in accordance with established IRS directives.

does not establish, "any direct analytical involvement of the Director of the WBO in the current claim", the WBO's rejection of his claim was procedurally defective.

We find no merit in petitioner's argument. The authority to "analyze" information is implicit in the authority to "receive and assign" information: There would be no point in the Director's assigning information, or in the recipient's receiving it, if the recipient lacked the authority to analyze it but could only reassign it to someone else, who likewise would lack authority to analyze it, and so on ad infinitum. Although the delegation order may be inartfully drafted, it is clear enough, we think, that in referring to "[t]his authority" (emphasis added), the delegation order refers in shorthand fashion to the previously described authority "to receive, analyze, and assign information". There is no requirement that the WBO Director personally analyze all whistleblower information.

E. Conclusion

In conclusion, the WBO's rejection of P's claim is supported by the administrative record, as completed, and was not arbitrary, capricious, or an abuse of discretion. Accordingly, we will grant respondent's motion for summary judgment.

To reflect the foregoing,

An appropriate order and decision will be entered.